UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ANDREW WILLIAMS,

          **Plaintiff,**

  - against -

JEAN G. KING, Deputy Superintendent of
Program (DSP) and IMAM ABDUL LATIF,
Facility Muslim Chaplain,

          **Defendants.**
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/14/15

**MEMORANDUM OPINION
AND ORDER**

**11 Civ. 1863 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On April 10, 2015, after a four-day jury trial, a verdict was entered in
favor of defendants.[1]  Plaintiff moves — pro se — for a new trial,[2] on the theory
that Imam Mubdi — a prison official who was not named in the original complaint
or identified in any of defendants' responsive filings — inculpated himself, at trial,
as the one primarily responsible for violating plaintiff's rights.  Specifically, Mubdi

---

[1]    *See* Dkt. No.165.  Familiarity with the underlying facts is presumed
throughout this Opinion.

[2]    Plaintiff describes the motion in a variety of different ways — a
motion for a new trial under Rule 59; a motion to amend pleadings under Rule 15;
a generalized "motion for reconsideration."  Because plaintiff is proceeding pro se,
his papers merit a "liberal and generous" reading.  *Oliver v. U.S. Bank Corp.*, No.
14 Civ. 8948, 2015 WL 4111908, at *1 (S.D.N.Y. July 8, 2015).  *Accord
Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (a pro se
party's papers should be construed "to raise the strongest arguments that they
suggest."  With this in mind, I conclude that his motion is best understood as a
motion for a new trial.

testified to the effect that he "initiated" the policy of Shiite registration at

Woodbourne, and that he did so to enable "Shiite practitioners in the Department

of Corrections ["DOCCS"] to reap the benefits of all the services [offered by

DOCCS] . . . [and] to participate in the holidays."[3]   When I asked Mubdi to clarify

whether he considered the registration requirement to be "[his] requirement" (as

opposed to Imam Latif's or Deputy King's), and whether he took it upon himself to

explain the requirement to Woodbourne inmates, the answer was yes.[4]   According

to Mubdi, the purpose of the registration policy was to ensure that prison officials

— himself included — could properly accommodate the needs of Shiite Muslims.

As Mubdi explained it,

> by receiving [registration] forms it helps me know where this
> individual is or keep track of his movements within DOCCS. So
> that if he goes to a particular jail and it's not noted that he is a
> practitioner of the Shiite faith, I will have paperwork stating that
> he is.[5]

Because this testimony was the first time that plaintiff (and everyone

else) learned of Mubdi's central role in the creation of a registration policy for

Shiites at Woodbourne, plaintiff argues that he should be allowed to add Mubdi as

a defendant — and to reopen the case against King and Latif.   In short, plaintiff

---

[3]     4/8/15 Trial Transcript, at 215-16.

[4]     *Id.* at 216-17 ("THE COURT: You now call it your registration
requirement. You told them about your requirement that they needed to do this in
order to observe all the Shi'ite holiday[?] THE WITNESS: Yes.").

[5]     *Id.* at 219.

believes that in light of Mubdi's testimony, "the jury was given a[n] improper charge," because Mubdi's remarks cast new light on Latif's and King's actions, and therefore "[a]dding Mubdi to [the case] will require a whole new defense."[6]

Defendants offer two arguments in response. *First*, they argue that plaintiff's objections were not property preserved at trial, which, if true, means that "a new trial [can] be granted" only in the extraordinary event that an "error [] was so serious and flagrant that it goes to the very integrity of the trial."[7] *Second*, defendants argue that the plaintiff has not shown prejudice. Even assuming, *arguendo*, that something in the Court's handling of Mubdi's testimony was erroneous, the error could not possibly have affected the jury's ultimate verdict.[8]

Because I agree with defendants' second argument, the preservation issue can be put to one side. Even if plaintiff is right (1) that Mubdi's testimony confirms the existence of an ad hoc policy of disparate treatment toward Shiite Muslims at Woodbourne, and (2) that Mudbi was responsible for the promulgation

---

[6]     Memorandum of Law in Support of Plaintiff's Motion ("Pl. Mem."), at 9.

[7]     *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (internal citations omitted).

[8]     *See Renz v. Grey Adver.*, 135 F.3d 217, 223 (2d Cir. 1997) ("[I]t is well-established that the party asserting error has the burden of demonstrating prejudice requiring reversal."). *See also* Fed. R. Civ. P. 61 ("[T]he court must disregard all errors and defects that do not affect any party's substantial rights.").

-3-

of that policy,[9] plaintiff's argument overlooks a crucial fact. Namely, the jury *found* that plaintiff was subject to religious discrimination at Woodbourne. But it also found that the policy was justified by countervailing penological interests, which means that although plaintiff was subject to disparate treatment, his constitutional rights were not violated.[10]

Given this verdict, for Mubdi's testimony to have affected the resolution of the case, it must have affected the way the jury viewed the legitimate penological interest in treating Shiites and Sunnis differently. Plaintiff has offered no theory — much less any evidence — to support this proposition. This is not surprising, for Mubdi's testimony did not address the issue of penological interests. Therefore, I need not decide whether the inclusion of Mubdi's testimony was erroneous, because even if it was, the error caused plaintiff no prejudice.[11]

---

[9]     *See* Pl. Mem. at 7-9.

[10]     *See* Verdict Sheet (Dkt. No. 165 at 3-8).

[11]     To the extent that plaintiff is also arguing that errors surrounding Mubdi's testimony affected his Free Exercise claims in additions to his Equal Protection claims (it is unclear from the face of the papers whether this is so), that argument fails for the same basic reason. The jury found that plaintiff was not barred from participating in Muslim holidays in the relevant time periods — *i.e.*, that the religious events were open to him. *See* Verdict Sheet. There is no evidence that Mubdi's testimony is, in any measure, what led the jury to this conclusion. If anything, Mubdi's testimony likely worked in the *other* direction, given that he seemed to emphasize, rather than deny, the existence of disparate treatment — albeit positive — toward Shiite Muslims. In other words, the jury's conclusion that religious events were open to Williams came in spite of, not because of, Mubdi's testimony — and any error related to that testimony is therefore irrelevant to the jury's finding as to religious exercise.

Accordingly, the motion for a new trial is DENIED. The Clerk of the Court is directed to close Dkt. No. 166.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 14, 2015

**- Appearances -**

**Plaintiff (pro se):**

Andrew Williams
DIN# 85-B-0689
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788

**For Defendants:**

Michael J. Keane
James B. Cooney
Daniel A. Schultze
Assistant Attorneys General
Office of the New York State Attorney General
120 Broadway
New York, NY 10271
(212) 416-8612