UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ANDREW WILLIAMS,

        Plaintiff,

  -against-

JEAN G. KING, et al.,

        Defendants.
------------------------------------------------------------- X

11 Civ. 1863 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

  Pro se Plaintiff Andrew Williams sues Defendants Jean G. King, former Acting Superintendent of Woodbourne Correctional Facility ("Woodbourne"), and William Mead, a former Department of Corrections and Community Supervision ("DOCCS") lieutenant and hearing officer at Woodbourne, alleging unconstitutional retaliation under 42 U.S.C. § 1983 arising out of a disciplinary hearing. Defendants move for summary judgment under Federal Rule of Civil Procedure 56. Defendants' motion is granted.

 **I. BACKGROUND**

  The facts below are drawn from Plaintiff's verified Second Amended Complaint,[1] Defendants' Rule 56.1 Statement[2] and the parties' other submissions on this motion, and are construed in favor of Plaintiff as the non-moving party. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

---

[1] Plaintiff attested under penalty of perjury that the alleged facts in the Second Amended Complaint, the operative pleading, are true to the best of his knowledge. "A verified complaint is to be treated as an affidavit for summary judgment purposes . . . provided that it meets the other requirements for an affidavit under Rule 56(e)." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *accord Alzawahara v. Albany Medical Ctr.*, 546 F. App'x 53, 55 (2d Cir. 2013) (summary order) (considering the factual allegations in the plaintiff's verified amended complaint on a motion for summary judgment).

[2] Plaintiff did not file a response to Defendants' Rule 56.1 Statement or a counter-statement.

On March 31, 2010, Plaintiff informed King that he intended to request permission on behalf of Woodbourne's Shiite Muslims to hold a fundraiser. King told Plaintiff that she would not approve the fundraiser because Plaintiff had filed numerous grievances. On April 9, 2010, Plaintiff filed a grievance against King for denying his request. On May 25, 2010, King responded to Plaintiff's grievance, affirming that the request to hold a fundraiser was denied.

On or around May 25, 2010, Correction Officer Huggler conducted a search of Plaintiff's cell at Woodbourne, after being directed to do so by Lieutenant Katz. During the search, Officer Huggler found two photos depicting "gang signs," two pieces of metal that had been "altered," one rock showing "visible signs that it was being used to sharpen objects" and one bottle containing expired pills. When Huggler questioned Plaintiff about the rock, Plaintiff said he did not know where it had come from, but that maybe it had come from the ceiling. After the search, Plaintiff was confined to his cell.

On or around May 26, 2010, Plaintiff received an Inmate Misbehavior Report based on the search. Plaintiff's alleged infractions -- possessing altered items and contraband and lying about it -- were deemed to be "Tier II" infractions under DOCCS Directive 4932, "Chapter V, Standards of Behavior and Allowance," which concerns "procedures for implementing standards of inmate behavior" (the "DOCCS Directive"). Under § 253.1(a) of the Directive, a Tier II disciplinary hearing must be conducted by a hearing officer of the rank of lieutenant or above, but "the Superintendent may, in his or her discretion, designate another employee" to conduct such a hearing. Under § 253.1(b), "No person who has participated in any investigation of the acts shall be a Hearing Officer at a Hearing relating to those acts . . . ."

Mead, one of two lieutenants at Woodbourne primarily assigned as hearing officers, was assigned to conduct Plaintiff's disciplinary hearing. The other lieutenant, Lieutenant Katz, was

disqualified from presiding at the hearing because he was involved in ordering the cell search that revealed the contraband in Plaintiff's cell. In a June 2, 2010, letter from King to Plaintiff while Plaintiff's disciplinary proceedings were on-going, King stated that she appointed Mead to conduct the disciplinary hearing. Plaintiff's Tier II disciplinary hearing was held on May 28, 2010, and June 8, 2010.

During the hearing, Plaintiff was permitted to call four witnesses, including two correction officers, a nurse and another inmate. Mead called one additional witness -- a plumber who had performed construction work in Plaintiff's cell. Three witnesses testified -- partially or completely -- in Plaintiff's absence. Plaintiff was removed for the testimony of two of those witnesses because the hearing officer found that Plaintiff was being disruptive, continually interrupting him (the hearing officer) and not following instructions.

Mead found Plaintiff guilty of possessing altered items and contraband and making false statements; and he found Plaintiff not guilty of possessing unauthorized medications. Mead did not permit Plaintiff to make a statement after he (Mead) read the disposition. Plaintiff was held for thirty days in "keeplock" -- a type of residential segregation -- with loss of all privileges. In a declaration filed with Defendants' motion for summary judgment, Mead stated that, at the time of the hearing, he was unaware that Plaintiff had filed any grievances against Woodbourne officials, including King, and that he did not communicate with King or anyone else about the hearing.

On June 11, 2010, Plaintiff appealed Mead's decision to King, who denied Plaintiff's appeal, without a written opinion, on June 16, 2010. In her declaration on this motion, King stated that she did not communicate with any DOCCS official, including Mead, concerning Plaintiff's disciplinary hearing, or consider, during the appeals process, whether Plaintiff had filed any grievance against her.

## II. STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *See Wright*, 831 F.3d at 71–72. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pippins v. KMPG*, 759 F.3d 235, 252 (2d Cir. 2014) (internal quotation marks and citation omitted).

## III. DISCUSSION

Defendants' motion for summary judgment is granted as to each defendant. There is no evidence from which a reasonable finder of fact could conclude that King or Mead retaliated against Plaintiff for filing a grievance against King.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To establish a claim under § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color" of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005)

4

(internal quotation marks omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. Here, there is no question that Defendants were acting under color of state law. The issue is whether they engaged in unconstitutional retaliation in violation of the First Amendment, as Plaintiff asserts.

To prevail on a claim for retaliation in violation of the First Amendment, a plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015) (internal quotation marks omitted). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted); *accord Richardson v. Williams*, No. 15 Civ. 4117, 2017 WL 4286650, at *4 (S.D.N.Y. Sept. 26, 2017).

The protected speech or conduct must be a "substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003); *accord McMillian v. Cty. of Onondaga*, --- F. App'x ----, 2017 WL 4534768, at *1 (2d Cir. Oct. 11, 2017) (summary order). "Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show . . . that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287–88 (2d Cir. 2003); *accord West v. Goord*, No. 05 Civ. 0447, 2017 WL 3251253, at *7 (W.D.N.Y. July 31, 2017). "[B]ecause virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act," courts in the Second Circuit

5

"approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted).

There is no dispute that the first element -- that Plaintiff engaged in protected conduct -- is satisfied as to both defendants. The basis for Plaintiff's retaliation claim is his filing a grievance against King on April 9, 2010. Filing a formal prison grievance is protected conduct under the First Amendment. *Id.* at 294.

### A. Defendant King

Summary judgment is granted as to King because no reasonable factfinder could conclude, based on the evidence in the record, that King retaliated against Plaintiff for filing a grievance against her. Even assuming that King assigned Mead to conduct Plaintiff's disciplinary hearing, Plaintiff has not offered any evidence that her doing so constitutes an adverse action, or that King would not have assigned Mead regardless of any retaliatory motive. Plaintiff also has not offered any evidence that King denied Plaintiff's appeal because Plaintiff filed a grievance against her.

First, as to the assignment of Mead, and assuming that King assigned Mead to be the hearing officer as Plaintiff contends, the record does not support a finding that her doing so constituted an adverse action. There is no evidence that the assignment was adverse -- for example, evidence that King had any reason to believe that Mead would conduct the disciplinary hearing in a biased manner. Plaintiff's conclusory statement that King assigned Mead as the hearing officer because he was biased is insufficient to defeat summary judgment. *See, e.g.*, *Richardson*, 2017 WL 4286650, at *5 (granting summary judgment on a retaliation claim, in part, because the plaintiff adduced no evidence that his disciplinary hearing was biased; rejecting as

conclusory the claim that causality was shown because the hearing allegedly violated the plaintiff's due process rights).

Likewise, there is no evidence from which a reasonable jury could conclude that Plaintiff's grievance was a substantial motivating factor in King's decision to appoint Mead, or to affirm Mead's disposition on appeal. King filed a declaration stating that she did not "take any action against Plaintiff on grounds that he had filed a grievance on April 9, 2010, against [her]" and that she "did not consider whether plaintiff had filed any grievance against [her] at any time during the appeals process." Plaintiff has not proffered any evidence to controvert King's sworn statements, such as contrary statements by King evidencing a retaliatory motive.

Also, the undisputed evidence shows that Mead would have been assigned to be the hearing officer regardless of any retaliatory motive. Mead was one of only two lieutenants at Woodbourne who was regularly assigned to be a hearing officer and who was eligible for the assignment. Under the Directive, a Tier II hearing must be conducted by an officer of the rank of lieutenant or above, who was not personally involved in the investigation of the acts underlying the hearing. It is undisputed that, at the time Mead was assigned to conduct the disciplinary hearing, Mead was one of two officers of the rank of lieutenant at Woodbourne who regularly conducted such hearings; and of those two, only Mead was not disqualified by his participation in the underlying search. King therefore is entitled to summary judgment as a matter of law.

**B. Defendant Mead**

Summary judgment is granted as to Mead because no reasonable factfinder could conclude that Mead retaliated against Plaintiff for filing a grievance against King. Plaintiff argues that Mead took the adverse action of conducting a biased hearing, finding Plaintiff guilty of three counts and sending him to keeplock for thirty days. Accepting for the purpose of this

motion that Mead's conduct constitutes an adverse action, Plaintiff has proffered no evidence that Mead's actions were causally related to Plaintiff's protected activity of filing a grievance against King.

First, Plaintiff has not adduced any evidence that Mead knew about Plaintiff's grievance against King. King testified in her declaration that she "did not communicate with any DOCCS official, including Lieutenant Mead concerning Plaintiff's disciplinary hearing." Mead stated in his declaration that he "did not communicate at all directly or indirectly with Jean King or anyone else regarding the hearing," and further that "[a]t the time, [he] was not aware of any grievance that plaintiff had filed, either against Jean King or any other DOCCS official or employee." "Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison official[] is insufficient for a retaliation claim." *Ortiz v. Russo*, No. 13 Civ. 5317, 2015 WL 1437247, at \*11 (S.D.N.Y. Mar. 27, 2015) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (affirming summary judgment of the plaintiff's retaliation claim against a correction officer where the basis for the alleged retaliation was a letter that the plaintiff wrote ten weeks earlier that did not name the defendant and complained of an incident in which the defendant was not involved)); *see also Smith v. Miller*, No. 15 Civ. 9561, 2017 WL 4838322, at \*8 (S.D.N.Y. Oct. 23, 2017) (on a motion to dismiss, dismissing a retaliation claim because the plaintiff failed to allege that the defendants knew about the plaintiff's grievance and failed to allege sufficient facts to suggest a retaliatory motive).

Second, Plaintiff has not proffered any evidence -- other than temporal proximity -- that his filing a grievance was a substantial or motivating factor in Mead's alleged retaliatory conduct. Mead, in his declaration, stated that he was not aware of Plaintiff's grievance against King at the time of Plaintiff's disciplinary hearing. Plaintiff has not presented any countervailing evidence

from which a reasonable factfinder could conclude that Mead retaliated against Plaintiff for a grievance in which he was not named. *See, e.g.*, *Tirado v. Shutt*, No. 13 Civ. 2848, 2015 WL 774982, at *10 (S.D.N.Y. Feb. 23, 2015) (granting summary judgment where the plaintiff failed to proffer any evidence that the defendants retaliated against him for a grievance in which they were not named and where the only evidence of retaliatory motive was temporal proximity) (citing *Faulk v. Fisher*, 545 F. App'x 56, 59 (2d Cir. 2013) (summary order) (affirming summary judgment where the plaintiff failed to proffer any evidence that the defendants were motivated by, named in or knew of the plaintiff's grievances and the only evidence of a retaliatory motive was the temporal proximity of the plaintiff's filing of the grievances and the alleged retaliatory conduct)). Summary judgment therefore is granted as to Mead.

Plaintiff's reliance on *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134 (2d Cir. 2010), an employment discrimination case arising under Title VII of the Civil Rights Act and the New York State Human Rights Law, is misplaced. That case involves a different body of law that includes an element of corporate knowledge by the employer of the protected activity, separate from the element of causation. *Id.* at 148. To the extent that retaliatory causation may be found in this case, where a corporate agent allegedly carried out an adverse employment action on the explicit or implicit orders or encouragement of a superior, with knowledge that Plaintiff had engaged in a protected activity, the record contains no evidence of such orders or encouragement and, as stated above, contains only evidence to the contrary.

Because summary judgment is granted as to each Defendant, this Opinion does not address the issue of whether Defendants are entitled to qualified immunity.

## C. Waiver

Plaintiff argues that Defendants' summary judgment motion is procedurally improper

because Defendants could have, but did not, move for summary judgment on the retaliation claim in their first summary judgment motion. "[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions." *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004); *see, e.g.*, *Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591, 2015 WL 4040823, at *10 (S.D.N.Y. July 2, 2015) ("Although successive summary judgment motions are disfavored, . . . a district court may in its discretion review a successive summary judgment motion seeking precisely the same relief as before."); *Hill v. Rayboy-Brauestein*, No. 02 Civ. 3770, 2008 WL 231439, at *2–3 (S.D.N.Y. Jan. 24, 2008) ("There can be no doubt that district courts have authority to permit parties to file supplemental summary judgment motions . . . ."). Here, it is appropriate to consider Defendants' motion for summary judgment. The Second Circuit held on appeal that Plaintiff's retaliation claims against King and Mead arising out of Plaintiff's disciplinary hearing were improperly dismissed and remanded for further proceedings. *Williams v. King*, 679 F. App'x 86, *88–89 (S.D.N.Y. 2017) (summary order). This Court has never addressed these claims on their merits. The Court therefore exercises its discretion to consider Defendants' motion.

IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at Docket No. 189, close the case and mail a copy of this Order to pro se Plaintiff.

Dated: January 24, 2018
    New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE